1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9    WESTERN AEROSPACE CORP.,

10           Plaintiff,

11       v.                                  Case No.  C06-896RSL

12   JOHN GLOWCZYK,                          ORDER DENYING MOTION FOR
                                             A PRELIMINARY INJUNCTION
13           Defendant.

14

15                        **I.  INTRODUCTION**

16       This matter comes before the Court on a motion for a preliminary injunction (Dkt. #10)

17   filed by plaintiff Western Aerospace Corporation ("Western Aerospace").  Western Aerospace

18   purchased defendant John Glowczyk's business in August 2005.  It alleges that Glowczyk

19   misrepresented the financial condition, profitability, and net worth of the company when he sold

20   it, leading plaintiff to pay an inflated price.  Western Aerospace requests that the Court reform

21   the promissory notes it executed in connection with the sale to allow it to deposit its future

22   payments into the Court's registry pending trial, and to enjoin Glowczyk from invoking the

23   default provisions in the promissory notes.

24       For the reasons set forth below, the Court denies preliminary injunctive relief.

25

26

27

28   ORDER DENYING MOTION FOR
     A PRELIMINARY INJUNCTION - 1

## II.  DISCUSSION

**A.     Background.**

Glowczyk owned and managed CNC Diversified Manufacturing, Inc. ("CNC" or the "Company"), an aerospace and defense parts manufacturer and supplier located in Kent, Washington.  On November 22, 2004, he entered into a Stock Purchase Agreement (the "Agreement") to sell the Company to Western Aerospace's predecessor in interest for a total purchase price of $10.5 million.  Between February 23, 2005 and August 3, 2005, the parties executed a total of seven amendments to the Agreement.  The sale of the Company closed on August 5, 2005.  The sale included a cash payment of $4 million, a promissory note of over $3 million to be paid over a five-year period, a promissory note for $50,000 to be paid within 60 days of its execution, and a contingent promissory note in the amount of $1 million, payable only if the Company's gross sales exceed $10 million before 2015.

Western Aerospace filed its complaint with this Court on June 26, 2006.  The complaint asserts claims for breach of the Agreement's representations and warranties, breach of the duty of good faith and fair dealing, and "loss of business and profits due to damage to reputation." The complaint requests indemnification, reformation, and an adjustment of the purchase price.

Specifically, Western Aerospace alleges that Glowczyk misrepresented the amounts of accounts receivable, accounts payable, the Company's inventory value, and the Company's salary and wage obligations, and failed to disclose Glowczyk's alleged misuse of company funds.  Western Aerospace also notes that Glowczyk, as required by the Agreement, provided a "Current Balance Sheet" setting forth the Company's financial information as of July 28, 2005. Western Aerospace alleges that the Current Balance Sheet contained numerous material inaccuracies.

Western Aerospace further alleges that in the Agreement, Glowczyk agreed to adjust the purchase price if the Company failed to meet certain "Closing Date Targets" set forth in the Agreement and its amendments.  The Closing Date Targets are defined in the seventh

ORDER DENYING MOTION FOR
A PRELIMINARY INJUNCTION - 2

1   amendment to the Agreement to include (1) minimum amounts for Net Book Value, cash or cash

2   equivalent amounts, and combined cash and accounts receivable; (2) no account payable to the

3   Company more than 60 days old; and (3) limitations on the Company's indebtedness.

4   Declaration of Andrew Levy, (Dkt. #11) ("Levy Decl."), Ex. H at Schedule 2.2(a)(ii).  After the

5   purchase, Western Aerospace directed an audit of the Company's financial statements.  It alleges

6   that the audit revealed a significant shortfall in the Closing Date Targets, including a Net Book

7   Value shortfall of over $2 million.  Section 2.2 of the Agreement entitles Western Aerospace to

8   retroactively adjust the purchase price in the event of a shortfall between the Closing Date

9   Targets and the actual Closing Date Financial Condition Statement.  Agreement at ¶¶ 2.2(c), (e)

10  (requiring Western Aerospace to furnish Glowczyk with a statement, within 120 days after the

11  closing date, setting forth a determination of the actual Closing Date Financial Condition

12  "together with an unaudited balance sheet of the Company prepared by the accountants for the

13  Company in accordance with GAAP (collectively, the 'Closing Date Financial Condition

14  Statement')").

15        In addition to the purchase price adjustment, Western Aerospace asserts that it is entitled

16  to offset the amount of the deficiencies against the amount it owes under the promissory notes.

17  One of the amendments to the Agreements added the following provision: "Purchaser shall be

18  entitled to offset against the next payments due under the Notes, any such indemnifiable Losses

19  which are not promptly paid by the Shareholder to the Purchaser."  Levy Decl., Ex. 7 at ¶ 2.11.

20        Western Aerospace is scheduled to owe a quarterly payment of $200,000 to Glowczyk on

21  November 6, 2006.  It must also make a second $200,000 payment prior to the April 2, 2007

22  trial date.

23  **B.     Analysis.**

24        As an initial matter, Glowczyk argues that in actuality, Western Aerospace is seeking a

25  prejudgment writ of attachment without following the necessary procedures.  The writ of

26  attachment procedure, however, is inapplicable here because Western Aerospace is seeking to

27

28  ORDER DENYING MOTION FOR
    A PRELIMINARY INJUNCTION - 3

1   avoid making payments to Glowczyk rather than attaching property he already owns.

2        A party is entitled to preliminary injunctive relief when it demonstrates (1) the

3   combination of probable success on the merits and the possibility of irreparable injury, or (2) the

4   existence of serious questions regarding the merits and the balance of hardships tips sharply in

5   its favor.  See Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).  Each of

6   these tests "requires an examination of both the potential merits of the asserted claims and the

7   harm or hardships faced by the parties."  Sammartano v. First Judicial Dist. Court, in and for

8   County of Carson City, 303 F.3d 959, 965 (9th Cir. 2002).  These are not separate tests, but

9   rather represent a continuum of equitable discretion "in which the required probability of

10  success on the merits decreases as the degree of harm increases."  Westlands Water Dist. v.

11  Natural Res. Def. Council, 43 F.3d 457, 459 (9th Cir. 1994).

12       In this case, Western Aerospace has not identified any public interest that would be

13  affected by an injunction.  Therefore, the public's interest does not weigh in favor of granting

14  the injunction.

15       **1.    Success on the Merits.**

16       Western Aerospace asserts that it has a strong likelihood of success on the merits of its

17  claims.  First, it alleges that Glowczyk failed to meet the Closing Date Targets, so it is entitled to

18  invoke the purchase price adjustment provision of the Agreement and obtain a reduction in the

19  purchase price of $2,112,425 according to the calculations of its auditor.  However, the

20  Agreement requires the parties to submit the issue of any purchase price adjustment to an

21  accounting firm mutually agreeable to the parties or an "Accounting Arbitrator" if they are

22  unable to agree on an accounting firm.  Agreement at ¶ 2.2(e)(iii).[1]  Because the parties agreed

23

24       [1] The parties completed the early stages of the dispute resolution procedure set forth in
25  Section 2.2.  Western Aerospace furnished Glowczyk with a statement of the actual Closing
    Date Financial Condition prepared by an accountant.  Glowczyk subsequently submitted his
26  Objection Notice, then Western Aerospace's counsel suggested two accounting firms.  It is
    unclear from the record what, if anything, occurred to resolve the dispute in accordance with
27

28  ORDER DENYING MOTION FOR
    A PRELIMINARY INJUNCTION - 4

1    to have that issue decided by an accounting firm or Accounting Arbitrator, it is unlikely that

2    Western Aerospace could successfully prosecute it in this Court.

3          Second, the amounts underlying all of plaintiff's claims were calculated by an accounting

4    firm, but Glowczyk has presented his own expert testimony challenging their calculations.

5    Based on the current record, which includes only brief analysis and underlying data, the Court

6    cannot determine which expert is likely correct.[2]  Furthermore, some of the concerns Glowczyk

7    has raised about Western Aerospace's calculations appear to have merit.  For example, Western

8    Aerospace argues that it overpaid Glowczyk in excess of $7 million, as calculated based on a

9    multiple of EBITDA (defined as Earnings Before Interest, Taxes, Depreciation, and

10   Amortization).  Although it argues that it applied the EBITDA as represented by Glowczyk to

11   calculate the erroneous purchase price, the Agreement, which contains an integration clause, is

12   silent about the EBITDA.  Accordingly, Western Aerospace has not shown a substantial

13   likelihood of success on the merits.

14         **2.    Irreparable Injury.**

15         Western Aerospace also alleges that it will suffer irreparable injury if it is required to

16   make the two quarterly payments to Glowczyk, rather than depositing them into the Court's

17   registry.  If Western Aerospace is ultimately successful, it can get its money back from

18   Glowczyk and be made whole by money damages.  Issuing a preliminary injunction, therefore,

19   will only prevent purely economic harm.  Economic injury, by itself, does not constitute

20   irreparable harm.  See, e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,

21   944 F.2d 597, 603 (9th Cir. 1991) (explaining that "economic injury alone does not support a

22   finding of irreparable harm").

23

24   Section 2.2(e) after that point.

25         [2] Indeed, by agreeing to submit the purchase price adjustment issue to a third party, the

26   parties acknowledged that their own individually chosen accountants could differ as to the
     appropriate calculations.

27

28   ORDER DENYING MOTION FOR
     A PRELIMINARY INJUNCTION - 5

1    Western Aerospace nevertheless argues that an injunction is appropriate because it may

2    not be able to recover the payments from Glowczyk.  In support of that concern, Western

3    Aerospace alleges that Glowczyk has "substantial dealings in Poland, and Western Aerospace is

4    concerned he will simply disappear to Poland."  Motion at pp. 11-12.  It also alleges that he has

5    expropriated over $500,000 from the Company to satisfy personal obligations, he has not

6    reported those funds to the IRS, and if the IRS learns of the distributions, it might seize his

7    assets.  Western Aerospace, however, has not presented any evidence that the IRS is

8    investigating Glowczyk or plans to seize his assets, or that Glowczyk has any intention of

9    absconding to Poland.  Although Glowczyk is of Polish descent, he immigrated to this country

10   decades ago, he has no family in Poland, and he has substantial ties to this area.

11       Western Aerospace also alleges that Glowczyk's "extensive pattern of misrepresentations

12   and breaches suggests that he will make significant efforts to avoid repaying any amounts owed

13   to Western Aerospace."[3]  Motion at p. 11.  Although prior dishonesty, if true, does not bode well

14   for future collection efforts, that alone is insufficient to show irreparable harm in this case.

15   Western Aerospace's concern that Glowczyk may hide the funds is speculative, as is its concern

16   that he may "lock away" any principal payments by spending them on his Florida home.

17   Various collection mechanisms are available if necessary.  Moreover, Glowczyk has significant

18   assets in Washington state, including over $5.7 million net in real estate.  The combination of

19   that amount and the $2.9 million that will remain owing on the notes at the time of trial appears

20   to be sufficient to cover any judgment Western Aerospace might obtain.  In addition, the

21   Supreme Court has disapproved of the analogous situation of granting a preliminary injunction

22

23       [3] Western Aerospace also alleges that Glowczyk has been the defendant in "multiple"
     civil and criminal lawsuits and has had several sizeable tax liens levied against him.
24   Supplemental Declaration of Andrew Levy at ¶ 9.  Plaintiff did not attach any documents to
     support those contentions, which lack adequate foundation.  Furthermore, the fact that Western
25   Aerospace did not include any dates of the alleged misdeeds suggests it was aware or could have
26   been aware of those circumstances prior to closing the deal, yet chose to continue with it
     anyway.
27

28   ORDER DENYING MOTION FOR
     A PRELIMINARY INJUNCTION - 6

1  restraining a defendant from using his finances in order to secure a future judgment.  See Grupo

2  Mexicana de Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 327 (1999) (holding that a district

3  court lacked authority to issue an injunction to restrain assets to satisfy a later potential judgment

4  "on a mere statement of belief that the defendant can easily make away with or transport his

5  money or goods").

6          Furthermore, Glowczyk has presented evidence that depriving him of the two $200,000

7  payments until after this case is resolved would result in a hardship to him.  Declaration of John

8  Glowczyk, (Dkt. #17) at ¶ 16.  Other than the payments from Western Aerospace, he has no

9  other source of income.  Glowczyk states that when he sold his business, he purchased a home

10  in Florida worth over $4.5 million.  He has a $2 million mortgage on that home that he expected

11  to pay based on the payments from Western Aerospace.  Id. at ¶ 15; see also id. at ¶ 16 ("If

12  Western Aerospace can avoid making the payments to me but instead make the payments into

13  the court, Western Aerospace deprives me of the ability to make the payments on my mortgages

14  and the income I expected for living expenses and other matters").

15          Finally, Western Aerospace has not explained why using the remedial provisions of the

16  Agreement, including invoking the arbitration and offset provisions, will cause irreparable harm.

17  Clearly, Western Aerospace believes that it has a right to take advantage of its contractual

18  remedies.  Western Aerospace alleges that if it did so, Glowczyk could declare it in default,

19  although it did not file copies of the promissory notes or cite any Agreement provision

20  addressing default.  Western Aerospace states, "A declaration of default would result in

21  acceleration of the Note and place Western Aerospace in potential default with its other

22  creditors, including its equipment finance lender (CIT) and its trade creditors."  Motion at p. 12.

23  That conclusory allegation is not supported by a declaration and is insufficient to show

24  irreparable harm for purposes of this motion.  Accordingly, the balance of harm tips in favor of

25  Glowczyk and against granting the injunction.

26          Understandably, any party would like assurances that it will be able to collect on a

27

28  ORDER DENYING MOTION FOR
     A PRELIMINARY INJUNCTION - 7

judgment if successful at trial.  However, an injunction is an extraordinary remedy, and the

Court will not grant it or deprive an individual of expected income without the proper showing.

Because Western Aerospace has not met its burden, an injunction is not warranted.

### III.  CONCLUSION

For all of the foregoing reasons, the Court DENIES the motion for preliminary injunctive

relief (Dkt. #10).


DATED this 3rd day of November, 2006.




_MW S Lasnik_

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR
A PRELIMINARY INJUNCTION - 8